**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KNOWLES ELECTRONICS, LLC, ) | |
| ) | |
| Plaintiff, ) | No. 06 C 6213 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| AMERICAN AUDIO COMPONENT, ) | |
| INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This is an action to enforce a settlement agreement. More than ten years ago, Knowles Electronics sued American Audio Component, AAC Acoustics Technologies Holdings, and General MEMS Corporation for allegedly knocking off a Knowles-made microphone. R. 169, Second Am. Compl.[1] The original suit asserted claims for tortious interference, unfair competition and violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*. The parties eventually reached a settlement that covered the claims pending before this Court, as well as claims at issue in other patent-related proceedings and threatened proceedings in other forums. *See* R. 254, Knowles Compl. at Exh. B, Settlement Agreement. Under the terms of the Settlement Agreement, Knowles licensed certain intellectual property to the Defendants, who would pay Knowles royalties on products using that intellectual property in accordance with an agreed payment structure. Settlement Agreement

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where applicable, a page or paragraph number.

§ 2. In light of the settlement, this Court dismissed the case with prejudice. R. 197, Order of Dismissal (Jan. 7, 2008).

But the dispute was revived in 2014, when AAC stopped paying royalties for certain products—in violation of the Settlement Agreement, Knowles alleges. Knowles Compl. ¶¶ 90-91; *see also* R. 260, Defs.' Countercl. ¶ 24. In response, Knowles filed an enforcement action[2] against American Audio Components and AAC Technologies Holdings[3] (for convenience's sake, these related parties, Knowles Compl. ¶ 31; R. 260, Defs.' Ans. ¶ 31, will be referred to together as "AAC").[4] *See* Knowles Compl. AAC filed a counterclaim, asking for a declaration that it has not infringed Knowles' patents and that no royalties are owed. *See* Defs.' Countercl. Each side has moved for judgment on the pleadings, with Knowles seeking judgment in its favor on its breach of contract claim and on all of AAC's counterclaims, R. 278, Pl.'s Mot. for J. on the Pleadings, and AAC in turn seeking declaratory judgment on the Settlement Agreement's interpretation, R. 284, Defs.' Mot. for J. on the Pleadings. For the reasons stated below, Knowles' motion is granted in part and AAC's motion is denied.

---

[2]Although the Order of Dismissal, R. 197, stated that "the Court shall retain jurisdiction over the parties and subject of this action for the purpose of enforcing the terms of their" Settlement Agreement, that language cannot, on its own, confer subject-matter jurisdiction on the *enforcement* action. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382 (1994); *see also* R. 235, 4/8/16 Order. As explained in a prior Order, however, there is an independent basis for subject-matter jurisdiction because the parties are diverse (Knowles is a citizen of Delaware and Illinois, American Audio Components is a citizen of California, and AAC Technologies Holdings is a citizen of the Cayman Islands and China) and the amount-in-controversy exceeds $75,000. *See* 28 U.S.C. § 1332; R. 253, 6/7/16 Order.

[3]This entity was known as AAC Acoustic Technologies Holdings Inc. in the original litigation. R. 254, Knowles Compl. ¶ 28; R. 260, Defs.' Ans. ¶ 28.

[4]Knowles did not name General MEMS Corporation in the enforcement complaint, *see* Knowles Compl., so that entity is not a party to this revived action.

# I. Background

In deciding each party's motion for judgment on the pleadings, the Court takes all well-pled allegations as true and draws all reasonable inferences in the nonmovant's favor. *Hayes v. City of Chi.*, 670 F.3d 810, 813 (7th Cir. 2012). But before diving into the enforcement dispute, some background on the initial legal dispute is needed.

## A. The Original Litigation

The lawsuit originally filed with this Court (call it the 2006 Litigation, for convenience's sake) revolves around a Knowles microphone—specifically, the SiSonic MEMS Microphone, which Knowles introduced in the early 2000s after a long period of research and development. Knowles Compl. ¶¶ 2, 4, 50. The microphone's design and manufacture incorporated a slew of trade secrets and patents, including U.S. Patent Nos. 7,242,089, 7,166,910, and 6,781,231 (for ease of reference, this Opinion will refer to these as the "'089 Patent," the "'910 Patent," and the "'231 Patent," respectively). *Id.* ¶¶ 3, 13, 53. The SiSonic enjoyed considerable commercial success, which Knowles credits to the microphone's innovative qualities, and spawned a number of copycats and knockoffs. *Id.* ¶¶ 8-9, 54.

According to the 2006 Litigation complaint, AAC was among those companies eager to jump on the SiSonic train. Knowles Compl. ¶¶ 15-16. To that end, Knowles alleged, AAC hired one of Knowles' employees and mined his knowledge of the

SiSonic's technology and manufacturing processes in order to develop a knockoff product. *Id.* ¶¶ 10-13, 56-63. Knowles also accused AAC executives of sneaking into Knowles' manufacturing facility in Suzhou, China. *Id.* ¶ 61. When it discovered what AAC was up to, Knowles filed suit in this Court for violations of the Illinois Trade Secrets Act, tortious interference, and unfair competition. *Id.* ¶¶ 16, 64-65; Defs.' Ans. ¶¶ 64-65; *see also* Second Am. Compl. A separate complaint was filed with the Office of Unfair Import Investigations at the United States International Trade Commission that, in addition to trade secret allegations that are also included in the district court complaint, raised patent infringement claims in connection with the '089 and '231 Patents (the Opinion will refer to this as the ITC Action). Knowles Compl. ¶¶ 67-71; Defs.' Ans. ¶ 71.

**B. The Settlement Agreement**

A year into the 2006 Litigation, the parties resolved the case and executed the Settlement Agreement. Knowles Compl. ¶¶ 17, 74; Defs.' Ans. ¶¶ 17, 74. The Agreement settled both the 2006 Litigation and the ITC Action, and also settled patent-related proceedings that the parties had filed against one another in China. Knowles Compl. ¶ 75; Defs.' Ans. ¶ 75; Settlement Agreement at 1, § 3. Among other things, the Agreement also granted AAC a license to use the '089, '910, and '231 Patents, Settlement Agreement § 1.4, 2.1, in exchange for regular royalty payments, *id.* § 1.5, 2.3-2.6. Royalties were calculated through a two-tier payment structure, with different rates for "First Tier Royalty Products" and "Second Tier

Royalty Products." *Id.* The Agreement defined First Tier Royalty Products as those incorporating the '231 Patent:

> AAC microphones … within the scope of, or covered by, the language of any claim of the '231 Patent including, without limitation, Part Numbers: SM0102, SM0301, SM0301L, SM0301EL, SM0401L, SM0401EL, SDM0102, SDM0301, SDM0401 and SDM0501.

Settlement Agreement § 1.5(A). And Second Tier Royalty Products were those covered by the '089 or '910 Patents:

> AAC microphones … within the scope of, or covered by, the language of any claim of the '089 or '910 Patents including, without limitation, Part Numbers SM0102B, SM0102BL, SM0301BL, SM0301BEL, SM0401BL, SM0401BEL, SDM0102B, SDM0301B, SDM0401B, and SMD0501B.

*Id.* § 1.5(B). Presumably because some products involved overlapping claims of both the '231 Patent *and* the '089 or '910 Patents, the definition of Second Tier Royalty Products clarified that those products fell in the First Tier rather than the Second Tier camp:

> Part Numbers SM0102, SM0301, SM0301L, SM0301EL, SM0401L, SM0401EL, SDM0102, SDM0301, SDM0401 and SDM0501 [that is, the Part Numbers specifically listed as First Tier Royalty Products and therefore within the scope of the '231 Patent], as presently configured and notwithstanding that these products fall within the scope of or are covered by one or more claims of the 089 or 910 Patents, shall not be considered Second Tier Royalty Products.

*Id.*

Lastly (for the purposes of this Opinion), the Agreement contained a broad mutual release of claims. Settlement Agreement § 4. The parties discharged one another from all claims, known and unknown, related to the 2006 Litigation, the

5

ITC Action, and the China proceedings. *Id.* § 4.1-4.2. What's more, the Agreement specified that the releases would not be restricted by laws or statutes limiting the reach of general releases. *Id.* § 4.3.

Satisfied with this resolution, the parties asked the Court to dismiss the 2006 Litigation, and the Court granted that request on January 7, 2008. Knowles Compl. ¶ 76; Defs.' Ans. ¶ 76; Order of Dismissal. The order directed the parties to "comply with the terms of their Settlement … Agreement" and dismissed the case with prejudice. Order of Dismissal.

### C. The Enforcement Litigation

The parties abided by the Settlement Agreement without issue until mid-2014, when AAC allegedly failed to provide a quarterly royalty report that was due. Knowles Compl. ¶ 90. The payment for that quarter, which came the following month, was less than what AAC had reported and paid in previous quarters. *Id.* ¶¶ 91-92; Defs.' Countercl. ¶ 24; Pl.'s Ans. to Countercl. ¶ 24. AAC justified this shortfall by noting that all but one of the claims of the '089 Patent had been cancelled by the Patent and Trademark Office in March 2014, and arguing that, under the Settlement Agreement, that meant AAC no longer needed to pay royalties for products covered by the cancelled claims. Knowles Compl. ¶ 93; Defs.' Countercl. ¶¶ 22-23; *see also* R. 260-4, Defs.' Ans. and Countercl. at Exh. E, '089 Patent Reexam. Cert. These products included Part Numbers SM0102B, SM0401BL, and SDM0401B. Defs.' Countercl. ¶ 24; Pl.'s Ans. to Countercl. ¶ 24. Knowles disagreed with AAC's interpretation of the Agreement, and this enforcement litigation ensued.

6

Both Knowles and AAC filed complaints under new case numbers in 2016. In *Knowles Elec., LLC v. AAC Techs. Holdings Inc., et al.*, No. 16 C 03527, Knowles alleged that AAC's failure to provide royalty reports, make appropriate royalty payments, and allow a third-party auditor to examine its sales records amounted to a breach of the Settlement Agreement (Count 1). Knowles Compl. ¶¶ 173-201. In addition, Knowles asked for indemnification by AAC of the damages and costs of the enforcement litigation (Count 2). *Id.* ¶¶ 202-212.

Separately, AAC commenced an action for declaratory judgment, *AAC Techs. Holdings Inc. et al. v. Knowles Elec., LLC*, No. 16 C 01101, asking for a declaration of noninfringement of the '089 Patent (Counterclaim 1), noninfringement of the '910 Patent (Counterclaim 2), and a declaration of no royalties owed for products covered by the '089 or '910 Patents (Counterclaim 3). R. 238-1, Mot. to Consolidate at Exh. A, 16 C 01101 Compl.

Knowles moved to consolidate both the 2016 cases under the original 2006 Litigation case number, R. 238, Mot. to Consolidate, and the motion was granted, R. 253, 6/7/16 Order. Knowles' complaint in 16 C 03527 was re-filed in this case as R. 254, *see* Knowles Compl., and AAC incorporated its three claims from 16 C 01101 into its Answer and Counterclaims, R. 260, with two additions: a request for declaration of no royalties owed on the '231 Patent, based on the cancellation of some of that patent's claims[5] (Counterclaim 4); and a request for judicial declaration

---

[5]The cancellation of those claims is currently under appeal beforethe Federal Circuit. Defs.' Countercl. ¶ 27; Pl.'s Ans. to Countercl. ¶ 27.

7

of the parties' rights and obligations under the Settlement Agreement (Counterclaim 5).

With everything now under one umbrella case, the parties have filed cross-motions for judgment on the pleadings. AAC's motion requests judgment on the pleadings as to Count 5 of its counterclaims (Contract Interpretation), Defs.' Mot. for J. on the Pleadings, essentially asking the Court to declare that (1) on the '089 Patent, AAC only needs to pay royalties on products within the scope of the *current* uncancelled claims of that patent; and (2) on the '231 Patent, AAC no longer needs to pay royalties on any of the products previously covered by that patent, so long as the cancellations of certain '231 Patent claims are affirmed by the Federal Circuit. R. 285, Defs.' Br. and Resp. Br. at 1-2. Knowles asks the Court to issue judgment in its favor on Count 1 of the Knowles Complaint (Breach of Contract), holding AAC responsible for continued payment of royalties on Part Numbers SM0102B, SM0401BL, and SDM0401B and any other products covered by the cancelled claims, and against AAC on all of its counterclaims. R. 278, Pl.'s Mot. for J. on the Pleadings.

## II. Legal Standard

The cross-motions for judgment on the pleadings are brought under Federal Rule of Civil Procedure 12(c), which tests the sufficiency of claims and counterclaims based on the pleadings. *See Hayes*, 670 F.3d at 813. When reviewing a 12(c) motion, the Court draws "all reasonable inferences and facts in favor of the nonmovant." *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). A

party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Hayes*, 670 F.3d at 813. Judgment on the pleadings is proper if the non-moving party cannot prove any set of facts sufficient to support his claim for relief. *Id*. In deciding this type of motion, the Court considers the pleadings alone, which consist of the complaint, the answer, and any documents attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

### III. Analysis

The question at the heart of the parties' dispute this: what effect, if any, does the cancellation of Knowles' patent claims have on AAC's obligation to pay royalties on products that fall within the scope of those claims? Knowles urges the Court to hold that there is no effect: AAC still owes royalties. Pl.'s Br. at 9-13. But AAC argues that the cancellations free AAC from the duty to pay royalties on products that had been covered by those claims. Defs.' Br. and Resp. Br. at 4-9. In the case of the '089 Patent, that would mean that AAC no longer has any royalty obligations for products incorporating the '089 Patent. *See id.*; Defs.' Countercl.. ¶¶ 22-23. Although the specific products in dispute are Part Numbers SM0102B, SM0401BL, and SDM0401B, Defs.'s Countercl. ¶ 24; Pl.'s Ans. to Countercl. ¶ 24, the parties' arguments extend beyond those three microphones.

To resolve this dispute, the Court looks to the relevant provisions of the Settlement Agreement. Under Illinois law, which governs the Agreement (neither

9

party argues otherwise), *see* § 9.3, the Court "initially looks to the language of [the] contract alone. If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (internal citations omitted).

Here, the Settlement Agreement mandates that AAC "shall pay" royalties on First Tier Royalty Products and Second Tier Royalty Products. Settlement Agreement § 2.3-2.6. The scope of those two product categories is set forth in the Definitions section. *Id.* § 1.5(A), (B). First Tier Royalty Products are those that are covered by the '231 Patent, and the definition specifies certain products by Part Number:

> AAC microphones … within the scope of, or covered by, the language of any claim of the '231 Patent including, without limitation, Part Numbers SM0102, SM0301, SM 0301L, SM 0301EL, SM0401L, SM0401EL, SDM0102, SDM0301, SDM0401 and SDM0501.

*Id.* § 1.5(A). Second Tier Royalty Products means the microphones covered by the '089 or '910 Patents (except for those also covered by the '231 Patent), and similarly the Agreement specifies certain products by Part Number. In pertinent part, the definition says:

> AAC microphones … within the scope of, or covered by, the language of any claim of the '089 or '910 Patents including, without limitation, Part Numbers SM0102B, SM 0102BL, SM0301BL, SM0301BEL, SM0401BL, SM0401BEL, SDM0102B, SDM0301B, SDM0401B, and SMD0501B.

*Id.* § 1.5(B).

The parties differ over whether the definitions of the Royalty Products, be they in the First Tier or Second Tier, are dependent on the *validity* of the various patents. Nothing in the text of the definitions suggests that validity of the patents matters, and indeed the definitional text and other provisions of the Settlement Agreement dictate only one reasonable reading: AAC agreed to pay royalties on, at the very least, the specified Part Numbers, regardless of validity.

This is so for a couple of reasons. First, there is no mention in the definitions that the validity of the patents is a requirement to finding that an AAC microphone is covered by definitions. Instead, the definitions say that microphones "within the scope of, or covered by, the *language* of any claim" of the patents are deemed Royalty Products. Settlement Agreement § 1.5(A), (B) (emphasis added). So long as the AAC microphone is within the "language" of the claim, then it is a Royalty Product, period. Another textual clue that validity does not matter is that the definitional section goes on, beyond the general definition of products covered by the language of the claim, to *specifically* identify Part Numbers that are deemed to be Royalty Products. Settlement Agreement § 1.5(A), (B). The three Part Numbers at issue (SM0102B, SM0401BL, and SDM0401B) as to the '089 Patent are thus deemed, via their specific listing, to be Second Tier Royalty Products—all without reference to validity of the patent.

AAC argues that the Agreement lists those Part Numbers as mere "illustrati[ons]" of Second Tier Royalty Products but that those Part Numbers are "not part of the definition." Defs.' Br. and Resp. Br. at 6. To support its argument,

11

AAC reaches far back in the United States Reports to invoke a general statement from *Federal Land Bank of St. Paul v. Bismark Lumber Co.*, in which the Supreme Court explained that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." 314 U.S. 95, 100 (1941). But that description of what "including" means does not help AAC. All that says is that someone cannot take a specific item on an "including" list and use that to limit the more general definition. *Id.* at 99 (holding that lower court erred by using specific type of tax on "including" list "as delimiting the scope of the" more general term). So, naturally, the reason the term "including" "is not one of all-embracing definition," *id.* at 100, is because the specific items that are explicitly included make up only a *part* of the whole definition. Inclusion on the list does not signify agnosticism about whether the item is part of the definition at all.

Other provisions of the Settlement Agreement—and indeed the overall context of the settlement itself—support the conclusion that the specified Part Numbers are Royalty Products no matter the patents' validity. In the "Dismissal of Claims" section of the Settlement Agreement, AAC agreed "not to seek invalidation of the '231 Patent, the '089 Patent, or the '910 Patent or assist others in seeking invalidation of those patents, except as may be required by law." Settlement Agreement § 3.2. So AAC was abandoning any argument that those patents were invalid. It would make little sense for AAC to surrender on invalidity and yet be able to condition payment of royalties on invalidity. And remember the overarching purpose of the Settlement Agreement: to resolve not just the 2006 Litigation, but

also the threatened ITC Action—which included claims against AAC for infringement of the '089 and '231 Patents. Settlement Agreement at 1; Knowles Compl. ¶¶ 68-71, 75; Defs.' Ans. ¶ 75. The purpose of the Settlement Agreement was to give the parties certainty and resolution on the various disputes between them. That purpose was highlighted by the Dismissal of Claims section, as well as broad mutual releases that discharged the parties from all claims, known or unknown, "connected with the matters raised in any of the Litigation or any existing … products" of the opposing party. Settlement Agreement § 4.1-4.2. In fact, the Agreement expressly waived either party's right under any laws or statutes that purported to limit the applicability of the general releases. *Id.* § 4.3. Against the backdrop of this attempt to definitively resolve their disputes, no text in the Settlement Agreement expresses an intent that the specified Part Numbers could be the subject of an escape hatch triggered by the outcome of other (or future) patent invalidity actions.

One final point weighs in Knowles' favor: Illinois courts recognize that they are trying to interpret contracts as of the time the contract was executed. In other words, when deciding contractual meaning, "[g]reat weight is to be given to the principal, apparent purpose and intention of the parties *at the time that they entered into the contract.*" *Schwinder v. Austin Bank of Chi.*, 809 N.E.2d 180, 194 (Ill. App. Ct. 2004) (emphasis added) (citation omitted). When Knowles and AAC entered into the Settlement Agreement, AAC abandoned invalidity arguments (and even agreed not to help anyone else assert invalidity), so at the time of the Agreement's

13

formation, there is no reason to think that the parties envisioned invalidity as a basis to discontinue royalties on the specified Part Numbers. If AAC wanted its royalty obligations to be conditioned on the ongoing validity of the underlying patents, it could have negotiated that with Knowles and proposed a provision in the Settlement Agreement saying so. But it did not. So AAC will have to abide by the deal that it struck in 2007, and continue to pay royalties on Part Numbers SM0102B, SM0401BL, and SDM0401B (and any other products that constitute First or Second Tier Royalty Products, as specified on the Part Numbers listings) for the rest of the time required under the Settlement Agreement. Judgment is granted in favor of Knowles on Count 1 of the Knowles Complaint; specifically, the Court holds that AAC has breached the Settlement Agreement and must pay the withheld royalties. The same analysis directly takes care of AAC's contract-based counterclaims. Specifically, the Court holds that AAC is not entitled to judgment on its Counterclaim 3 (Declaration of No Royalties Owed, '089 and '910 Patents), Counterclaim 4 (Declaration of No Royalties Owed, '231 Patent), and Counterclaim 5 (Contract Interpretation). On those Counterclaims, judgment is entered in favor of Knowles and against AAC.

AAC's other counterclaims also must fail in light of the interpretation of the Settlement Agreement. Specifically, Counterclaims 1 and 2 explain that Knowles has accused AAC of infringing the '089 Patent and the '910 Patent by withholding royalty payments under the Settlement Agreement. Defs.' Countercl. ¶¶ 34, 41. AAC seeks a declaration that the specified Part Numbers do not infringe "any valid

14

and enforceable claim" of the '089 Patent and the '910 Patent. Defs.' Countercl. ¶¶ 35, 42. So Counterclaims 1 and 2 really turn on the resolution of the Settlement Agreement: if AAC is obligated to pay royalties under the Settlement Agreement despite the invalidity of the patents, then the sought-after noninfringement declarations do not matter. Conversely, if AAC is not obligated to pay royalties under the Settlement Agreement for products covered by invalidated claims, then Knowles would not accuse AAC of infringement. Having decided that the Settlement Agreement *does* require royalty payments for the listed Part Numbers regardless of validity, there is no live controversy. So Counterclaims 1 and 2 are dismissed as moot.[6]

### IV. Conclusion

AAC's motion for judgment on the pleadings, R. 284, is denied and Knowles' motion for judgment on the pleadings, R. 278, is granted: Knowles is entitled to judgment in its favor on Count 1 and on all of AAC's Counterclaims. What remains in the case is (1) to reduce the Count 1 judgment to a sum certain; (2) litigate that aspect of Count 1 that seeks auditor access to information; and (3) litigate the indemnity claim (Count 2). But these remaining issues seem readily resolvable, and now that the parties have the decision on the cross motions, the parties must engage in settlement negotiations. So, rather than enter Rule 54(b) partial

---

[6] The Court directed the parties to brief whether claim preclusion blocks AAC from asserting the noninfringement counterclaims, but there is no need to address that issue because the interpretation of the Settlement Agreement itself is enough to resolve the counterclaims.

15

judgments, the time is ripe for a serious attempt to resolve the case and to avoid additional attorney's fees and costs, not to mention delay. The Court will discuss these issues with the parties at the next status hearing.

ENTERED:

s/Edmond E. Chang  
Honorable Edmond E. Chang  
United States District Judge

DATE: March 8, 2017